## FORFEITURE OF STREET RAILWAY GRANTS.

[Circuit Court of Lucas County.]

THE CITY OF TOLEDO v. THE TOLEDO RAILWAY & LIGHT CO.

Decided, October 3, 1903.

*Street Railways—Franchise for—Time Limit for Building the Road —Conditions Precedent and Subsequent—What Constitutes Completion of a "Fill"—Forfeiture of Grant— Suit for, Must be Based Upon Acton of Council—Provisions for, Strictly Construed Against the Municipality—Waiver of Conditions for—Damages—Injunction.*

A street railway grant provided that the road should be built and in operation within six months from the time the city had completed certain grading; otherwise all rights and privileges thereby granted should be forfeited. A large part of the road was built and put in operation. Ten years later the city caused the stipulated grading to be done, which was immediately accepted and paid for. During the winter months following the "fill" thus made settled from six inches to one foot. It was leveled up, and the construction of the road begun, when work was stopped by the mayor and police on the ground that the time limit had expired, and suit was brought to enjoin further work and forfeit the franchise as to this part of the route. *Held:*

1. That the completion of the grading contemplated by the ordinance granting the franchise should date, not from the acceptance of and payment for the work, but from the date of its being put in such condition that a street railway could safely be built upon it.

2. The rule requiring that forfeitures be strictly construed against those for whose benefit they are provided, together with the entire failure of the city to show that any damages have been suffered by reason of the delay, and the further fact that if any part of the franchise is to be forfeited, it must be forfeited as a whole, including the portion of the road which was built ten years before the city did the stipulated grading, forbids the granting of the relief asked.

3. Moreover a suit for the forfeiture of such a franchise will not lie, unless based upon a determination by the city council that a forfeiture should be declared.

HULL, J.; HAYNES, J., and PARKER, J., concur.

This action comes into this court on appeal. It was brought by the City of Toledo to enjoin the defendant from

constructing a piece of railroad track, about a quarter of a mile long, on Central avenue in this city, and to have declared a forfeiture of all the rights, franchises and privileges of the street railway company in that street, for the purpose of building, maintaining and operating a street railroad. The claim of the plaintiff is, as set forth in the petition, that on the 14th day of December, 1901; the common council of the City of Toledo passed an ordinance giving and granting to The Metropolitan Street Railway Company, its successors or assigns (of which the defendant in this action is the successor), the right to construct, maintain and operate the same over Central avenue from Cherry street to the westerly limits of the City of Toledo, being a distance of about one mile, and running between Cherry street and Collingwood avenue a portion of the way. The ordinance, as set forth in the petition, required that the street railway company should complete the construction of the street railroad and have it in operation by September 1, 1902; but it contained further provision that the City of Toledo was to grade and fill in that portion of the route that lay between Cherry street and Collingwood avenue—which was lower than the grade line, there being a ravine at that point which it was necessary to fill in and grade before the street railroad could be properly constructed. And it is set forth in the petition that the ordinance provided that the city was to do this work of filling in and grading Central avenue, and that if the city did not complete the work of grading and filling in within the time limited, to-wit, by the first of September, 1902, the time limit for the building of the street railroad, then that the railroad should be built and its operation commenced within six months after the city completed the filling and grading of this portion of the route. And the petition sets forth and complains that the street railway company did not build its track on this part of the route lying between Cherry street and Collingwood avenue, within six months after the city had completed its fillings in and grading, but that on the 7th day of July, 1901, it had commenced the work of laying its tracks and building a street railroad over this part of its route, the petition alleging that the city had completed its work of filling in and grading more than six months prior to the first

day of July, 1901; and therefore it is claimed by the city in
its petition that the street railway company has forfeited all of
its rights and franchises in this portion of the route lying be-
tween Cherry street and Collingwood avenue, and the petition
asks that such forfeiture be declared and asks that the street
railway company be enjoined from building and constructing
said railroad at that point.

The ordinance passed by the City of Toledo on the 14th day of
December, 1891, contained substantially the provisions set forth
in the petition, and, that I may be exact, I will quote from the
ordinance this provision:

"Section 4. The work of the construction of said extension
of said street railway shall be under the direction of the city
civil engineer, and shall be commenced as soon as practicable
after the passage of this ordinance, and shall be completed and
in operation on or before September 1, 1892; Provided, that work
thereon shall not be required until after said Central avenue is
graded to the established grade between Cherry street and Col-
lingwood avenue, and in case the same is not graded and the
road herein authorized to be constructed is not completed within
the date named, then said extension shall be constructed and put
in operation within six months from the completion of said
grading."

And Section 6 of said ordinance provides:

"Section 6. If said company, its successors or assigns, shall
fail or refuse to comply with the conditions of this ordinance,
or with an ordinance entitled 'An ordinance to grant to the
Metropolitan Street Railway Company the right to reconstruct
its tracks and extend its charter,' passed March 11th, 1889,
or the general ordinances of the city of Toledo regulating the
operation of street railways, and amendments existing or here-
after made thereto, so far as the same are applicable and not
inconsistent with the conditions of this ordinance, the rights
and privileges hereby granted shall be deemed forfeited and
the City of Toledo shall have the right to re-enter and take
possession of the same to the exclusion of said company. Passed
December 14, 1891."

The grading of this portion of the street was not done by the
city for nearly ten years after the passage of the ordinance,
but was let by contract in the year 1901, and the work was

100    CIRCUIT COURT REPORTS—NEW SERIES.

City of Toledo v. Toledo Railway & Light Co.  [Vol. II, N. S.

accepted by the city council on the 11th day of November, 1901, by formal resolution of the council, and the contractor ordered paid. So that more than six months had expired from the time this work was accepted by the city when the street railway company began its work of constructing the street railroad on this part of the route, to-wit, on or about the 7th of July in the following year, 1902. It is claimed by the city that on account of this failure to comply with this provision of the ordinance, that the whole of this road or route—about one mile in length—should be completed and in operation within six months after this filling and grading had been done; that all of the company's rights as to this part of the road have been forfeited.

It is claimed by the defense that this is not true as a matter of law or fact; and, further, that no forfeiture has ever been declared by the city; also as a matter of fact, notwithstanding its acceptance by the council, that this work of filling and grading was not done by the city and finished and completed within six months before the commencement of this work by the railway company. Evidence was offered, both by the city and by the defendant.

It seems that prior to July, 1902, the street railway company had built and completed and had under operation about three-fourths of this entire route—about three-quarters of a mile. The company had not waited for the city to do this filling and grading before commencing the building of the street railroad, and, within probably six months after the ordinance was passed, the entire route as contemplated by this ordinance had been built, except that portion which could not be built on account of the condition of this grading, and cars had been maintained and operated upon this portion of the road for nearly ten years before this grading was done by the city. After the grading had been completed and finished, which the railway company claims was in fact early in the spring of 1902, the company, in the fore part of July, commenced the work of building the street railway at this point, but were stopped by the mayor of the city and the police, and the work of building a railroad there was prevented by policemen on the ground, for a period of about ten days, until this action was commenced by the city solicitor, to have

determined in a court of equity the rights of the respective parties.

An issue of fact, then, in the case is: whether the city had finished and completed its work of filling and grading as contemplated by this ordinance, more than six months before the work was commenced by the street railway company over this part of the route?

Several witnesses were called by the plaintiff, and some by the defendant. The Assistant City Engineer, Mr. Ridenour, was called by the city, and testified that it was necessary after such work as this had been done that it be given considerable time to settle before it would be feasable to lay a pavement upon the street, or to build a street railroad upon it. This grading was accepted by the city in November, 1901. He testified that as a rule they gave some six months for settling before they did such a thing as to pave a street, and that it should be allowed an entire winter for settling, in his judgment, and that before a street railroad should be built there should be a solid substructure.

Mr. Miller, who was an inspector in the employ of the city during a portion of the time that this grading was going on, testified that he saw it in the spring of 1902; that there were holes in it and that it had settled in spots. It was shown on the part of the defense that complaints were made by some of the citizens who resided upon the line of the street, that the grading had not been properly done.

Mr. Sheehan, the contractor who did the work for the city, was called as a witness and testified that he filled in with almost anything that he could get—sand, quicksand, and the roots of trees, rubbish, street sweepings—and anything that would fill a hole; that when the engineer, or the proper officer, pronounced the work up to grade it was accepted by the council and he got his pay, but that the grading had no sooner got up to the grade line than it began to settle, and it settled from one foot to two feet at various places during the winter months, and he testified that it was a usual and ordinary thing for such work to settle in the six months that follow the doing of the work, so that it was necessary to go over it again and bring it up to the grade line,

and he testified that the street commissioner did work upon this street during the winter, filling it up here and there as it settled; and, after it had been accepted by the council, he testified that he went back and filled in at places, and did work in that way in the latter part of November; and he says that the commissioner filled in some late in the winter; that it had settled at the sewer connection points, and he says that the street was at that time below grade probably from six inches to fifteen inches at different places, and that in the spring of that year it was from six inches to one foot below grade.

There was other testimony on this question, and we find that the overwhelming weight of the evidence is that this work of grading in question was not completed and finished as contemplated by this ordinance, until the spring of 1902, a short time before this work was commenced by the street railroad company.

The acceptance of the work by the city council, by resolution, and the direction to pay the contractor, would not bind the street railway company, the other party to the contract made by by the ordinance. The ordinance imposed upon the city the duty and the burden of filling this in to the grade line and completing it, and it gave the street railway company the privilege of waiting six months after that filling was completed, or waiting so long as they pleased, so that the railroad was completed and in operation within six months after the grading was finished by the city, the ordinance providing "that work thereon shall not be required until after said Central avenue is graded to the established grade between Cherry street and Collingwood avenue, and in case the same is not graded and the road herein authorized is not completed within the date named, then said extension shall be constructed and put in operation within six months after the completion of said grading."

We hold that that language in the ordinance requiring the city to complete this grading, means that it shall be in fact completed—not that it shall be accepted by the city council, but that it shall be put in such condition as that it would be proper and safe to build a street railroad upon it. This was part of the work which the city was to perform in the construction of this improvement and means of travel in the city,

and for which the street railway company had been given this grant by the ordinance. The city was required to do this filling in such a way that it would be safe and practicable to construct a street railroad upon it, and when the filling was done with quicksand and roots and street sweepings, and with any rubbish, as the contractor testified that he could get, the city had not finished the work as contemplated by the ordiance, and it began to settle immediately, and settled from six inches to a foot and two feet, in different places, as shown by the evidence. It was conclusively shown that this part of the street on Central avenue between Cherry street and Collingwood avenue was not in a fit condition to build and construct a railroad upon in the fall or winter of 1901-2, and it was not in such condition until the spring of 1902, a very short time before the work of building the railroad was commenced by the street railway company.

To warrant a court in declaring a forfeiture of the rights and privileges granted to a company under an ordinance of this kind, the evidence must be clear and conclusive that the company has violated the provisions of the ordinance in such a manner as to warrant a forfeiture; a court would not forfeit the privileges so granted or take from the company the right to build or finish building a street railroad upon any doubtful case. The authorities upon this question are numerous.

It should be noted that the city does not ask for the forfeiture of this entire grant and of the rights and privileges extending along this entire route, but only of a portion of the line. There is no provision in the ordinance for a forfeiture of a portion of the grant—the only provision is for a forfeiture of all the rights and franchises. The city has no authority under this ordinance to select such a portion of the route as it sees fit and ask to have a forfeiture declared upon it; if it is entitled to a forfeiture, it is for all. Provisions of forfeiture are to be strictly construed, and have been from time immemorial—from Shylock's case and before, down to the present time.

There is no provision in the ordinance for a partial forfeiture. Forfeitures are not favored by courts, and especially where it appears that the provision of forfeiture is put into a contract, agreement or franchise only to secure the performance of the

**104   CIRCUIT  COURT  REPORTS—NEW  SERIES.**

City of Toledo v. Toledo Railway & Light Co.  [Vol. II, N. S.

work, and forfeiture of the property or of the rights of a person, natural or artificial, because of a slight failure to perform all the provisions of the contract, is not favored by the courts, and where compensation may be had in lieu of forfeiture, a court of equity will grant that instead.  As the Supreme Court of this state has said in 33 O. S., 459 (*The Union Central Life Ins. Co. v. Pottker*) :

"Forfeitures are odious, and there must be no cast of management or trickery to intrap a party into a forfeiture."

And in 53 O. S., 558 (*Webster et al v. Dwelling House Ins. Co.*) :

"Provisions for forfeiture are to receive, where the intent is doubtful, a strict construction against those for whose benefit they are introduced.

"If it be left in doubt, in view of the terms of the instrument and the relation of the contracting parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction will be adopted which is most beneficial to the promisee."

And on page 563 of the opinion:

"Relief against forfeitures is matter of equitable cognizance; but rules applicable to the subject are resorted to in courts of law, and there seems no good reason why the principles which govern courts of equity should not be available in a suit at law where the facts make such cognizance necessary to the ends of justice.

"A primal rule is that forfeitures are not favored either in equity or at law; indeed, it is declared as a universal rule that courts of equity will not lend their aid to enforce a forfeiture. Following as a corollary from this, provisions for forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced."

It has been held by some courts that where there is in an ordinance a condition precedent, where something is required to be done before a right can vest, that the courts can not relieve against that.  But it has been held by the Supreme Court of this state that a condition of the kind involved here is to be regarded as a condition subsequent.  The right to build the road

was vested in the company when the ordinance was passed; it had built its road upon three-quarters of the route and was operating it, and this condition should be regarded as a condition subsequent. The Supreme Court say in 43 O. S., 46 (*State, ex rel Silsbee*, v. *Boyce*) :

"Where the conditions of the ordinance do not clearly appear to be conditions precedent, they will be regarded as conditions subsequent."

No action has ever been taken by the city council to declare a forfeiture, or by any other duly authorized officer of the city. The city never complained that the railway company had not completed this part of the work within the time limit, until this suit was commenced, and not then until after the work was stopped by the mayor and police force. The city council has never authorized or directed the city solicitor to commence this action and ask that a forfeiture be declared. Whether the city solicitor had authority to begin such an action without a resolution passed by the city council, we need not now determine; but I speak of this fact as in line with what I have said—that the city has not done anything to indicate a desire for the forfeiture of these rights of the railway company. In the case in the 43 O. S. (*supra*), the court say, on page 52 :

"The solicitor is a public officer elected by the people, and when required so to do by resolution of the council, he shall prosecute or defend for and in behalf of the corporation, except in certain cases." (Rev. Stats., 1777).

On the question of forfeitures, in Pomeroy's Equity Jurisprudence, Section 381, Vol. 1, the author says, on page 415 :

"The general doctrine was finally settled that wherever a penalty or forfeiture is inserted merely to secure the payment of money, or the performance of some act, or the enjoyment of some right or benefit, equity regards such payment, performance, or enjoyment, as the real and principal intent of the instrument, and the penalty or forfeiture as merely an accessory, and will therefore relieve the debtor party from such penalty or forfeiture whenever the actual damages sustained by the creditor party can be adequately compensated. The application of the

106    CIRCUIT   COURT   REPORTS—NEW   SERIES.

City of Toledo v. Toledo Railway & Light Co.   [Vol. II, N. S.

principle in such cases, and the relief against penalties or for-feitures, must always depend upon the question whether compensation can or can not be made.''

In this case there is no complaint that the city is damaged. If it were true that a few weeks had gone by beyond the time limit in the ordinance, there is no claim made that the city has been damaged in the slightest respect by this failure on the part of the street railway company to complete this work within the exact time limit. There is no complaint made by any citizen of the city of Toledo that he has been damaged. No one is requesting that any officer of the city, the city solicitor or the council, or any other body or officer, go into court and ask to have a forfeiture declared. The purpose and object of the city council and the railway company in entering into this contract by ordinance, was to have a railroad built in the streets of the city for the benefit of the street railroad company and also of the people of the city, in order that they might have addi-tional transportation facilities throughout the city. The pur-pose was not to get hold of and destroy the property of the street railway company, and the fact that the road was not completed exactly within the time fixed, if that were true, does not ma-terially affect the rights of the city or damage in any appre-ciable amount the city or any of the citizens thereof. The city had delayed for ten years the completion of this work of grad-ing. The street railway company had built the rest of the road between nine and ten years before they were required to build it and it would be clearly contrary to both law and equity and a violation of the fundamental principles of right and justice to declare a forfeiture of this small portion of the route, on the ground that it was not completed within the exact time fixed in the ordinance.

A case in Illinois is in point, 73 Ills., 541 (*The Chicago City Railway Company* v. *The People, ex rel Allan C. Story*), where the Supreme Court of Illinois say:

"Where a railway company was authorized by its charter to construct and maintain a railway in a certain part of the city of Chicago, over and along such streets, etc., as the common council had or might authorize, in such manner and upon such

terms and conditions as the common council had or might contract with the company, and, by ordinance of the city, license was given to lay a single track along a certain street half the way within the time required: *Held:* That the common council had the right and power to waive the condition as to the time for completing the same, it being a provision in favor of the city to secure the public interests.''

And on page 549 of the opinion, tne court say:

''Courts proceed with great caution in proceedings which have for their object the forfeiture of corporate franchises. It is not every non-performance of the condition in the act of incorporation, or every misuser, that will forfeit the grant. A substantial performance according to the intent of the charter is all that is required.''

Another case upon the proposition that the city had the power to waive this provision of the ordinance, is found in 5 Ohio Circuit Court Reports, page 319 (*The Hamilton Street Ry. & Electric Co.* v. *The Hamilton, etc., Transit Co.*), the Circuit Court of Hamilton County. The opinion is by Judge Smith, in which, speaking for the court, he said:

''Nor do we think that we should in this case, at the instance of the defendants, determine or adjudicate whether for any reason the plaintiff company has forfeited the right given to it by the ordinance, to construct and operate its road. This also, in the first instance, is a matter for the consideration and decision of the city council which (if the forfeiture has occurred) may insist upon or waive it.''

As I have said in this case there has been no act of the council looking towards a forfeiture of this franchise. The question is still open whether the city desires to forfeit it, and before the property of the railroad company is declared forfeited and taken from it and its tracks torn form the streets, the company has a right to be heard before the council.

In a case found in 13 Ohio Federal Decisions, pages 307-312, opinion by Judge Taft, this is said:

''The ordinance would seem to vest in the village the power to act and remove the tracks from the streets if the council concluded that the conditions had not been complied with.'' *Stewart* v. *Ashtabula*, 13 Ohio Fed. Dec., 307-312 (98 Fed. Rep., 516, 520).

It seems to us very clear that the city council is the proper body to determine whether the city desires that these rights and privileges shall be forfeited or not, or whether a slight failure on the part of the street railroad company in the matter of time in doing this work shall be waived. We are very clear that under the evidence offered here no court of equity would declare a forfeiture of these rights or enjoin the street railroad company from building and constructing its road upon this street. On the contrary, we find from the evidence in the case that the street railroad company has complied with the conditions imposed upon it; that it commenced the work within the time fixed and was proceeding properly and in order and according to law to fulfill its part of the ordinance when it was stopped.

The petition of the plaintiff will be dismissed at its cost, and injunction denied.

*U. G. Denman,* City Solicitor, for plaintiff.

*Smith & Baker,* for defendant.