THE CITY OF CHICAGO *et al.*

*v.*

ROTHSCHILD & CO. *et al.*

*Opinion filed December 22, 1904.*

1. APPEALS AND ERRORS—*when a freehold is not involved.* Determination of the rights accruing under an ordinance granting the privilege of erecting and maintaining an elevated railroad for a fixed period does not involve the question of a freehold.

2. SAME—*right to maintain railroad under city ordinance is not a franchise.* Right to construct and maintain a railroad, granted by a city ordinance, is a license, and not a franchise, within the meaning of section 88 of the Practice act, providing for a direct review by the Supreme Court of a case in which a franchise is involved.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. L. HONORE, Judge, presiding.

This is a bill in chancery filed by Rothschild & Co. and Edward Morris, a tax-payer, in the circuit court of Cook county, to enjoin the city of Chicago and its mayor and com-

missioner of public works from interfering with the construction of, and from removing when constructed, a certain elevated passageway about to be constructed by Rothschild & Co. and the Union Elevated Railroad Company to connect the platform of the station of the elevated road known as the "Union Loop," located at the intersection of VanBuren and State streets, with the second story of the store building of Rothschild & Co., situated upon the north-east corner of said VanBuren and State streets. The Northwestern Elevated Railroad Company was made a party, as well as all the other elevated railroad companies using the loop. Answers and replications were filed, and the Northwestern Elevated Railroad Company filed a cross-bill alleging it had succeeded to the rights of the other elevated railroad companies in the loop, and that under the ordinances of said city authorizing the construction of said elevated railroads, and especially the elevated road on VanBuren street, it had the right to erect and maintain said passageway, and principally relied, as the complainants in the original bill also did, upon an ordinance passed by the city council and approved by the mayor, bearing date June 29, 1896, which ordinance authorized the construction and maintenance, for the period of fifty years, of an elevated railroad in VanBuren street between Wabash avenue and Market street, with necessary stations, etc. A trial was had before the court and a decree was entered in accordance with the prayer of the original and cross-bills, and the city of Chicago has sued out a writ of error from this court to review said decree.

EDWIN WHITE MOORE, (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for plaintiffs in error.

DUPEE, JUDAH, WILLARD & WOLF, and WILLIS E. THORNE, for defendants in error Rothschild & Co. and Edward Morris.

CLARENCE A. KNIGHT, and WILLIAM G. ADAMS, for defendant in error the Northwestern Elevated Railroad Co.

Mr. JUSTICE HAND delivered the opinion of the court:

We are of the opinion the writ of error to review the record in this case should have been sued out from the Appellate Court instead of from this court. The ordinance relied upon as authorizing the construction of said passageway does not create a perpetual right to erect and maintain an elevated road in VanBuren street, but such right, by the terms of the ordinance, is limited to fifty years. No freehold was therefore involved in the determination of said suit; (*Village of Harlem* v. *Suburban Railroad Co.* 198 Ill. 337;) and this court has repeatedly held that a franchise is a privilege which emanates from the sovereign power,—that is, in a case like this, from the State,—and that the power conferred upon a railroad company, by ordinance, to locate and maintain a railroad in the streets of a city is a license, which, after the road is built, may be irrevocable, but that such ordinance does not create or confer upon the railroad company constructing the railroad in the street a franchise. *Chicago City Railway Co.* v. *People,* 73 Ill. 541; *Metropolitan City Railway Co.* v. *Chicago West Division Railway Co.* 87 id. 317; *Board of Trade of Chicago* v. *People,* 91 id. 80; *Mills* v. *Parlin,* 106 id. 60; *Chicago Municipal Gas Light and Fuel Co.* v. *Town of Lake,* 130 id. 42; *City of Belleville* v. *Citizens' Horse Railway Co.* 152 id. 171; *People* v. *Central Union Telephone Co.* 192 id. 307; *Rostad* v. *Chicago Suburban Water and Light Co.* 211 id. 248.

In *Chicago City Railway Co.* v. *People, supra,* on page 547, it was said: "A franchise, according to the definition given by Blackstone, is a royal privilege or branch of the king's prerogative subsisting in the hands of the subject, and, being derived from the crown, must arise from the king's grant. (2 Blackstone, 17.) Corporate franchises in the American States emanate from the government or the

sovereign power, owe their existence to a grant, or, as at common law, to prescription, which presupposes a grant, and are vested in individuals or a body politic. The grant or license given by the ordinance comes within no definition of a franchise. Besides, a municipal body, it is understood, possesses no power to confer a franchise. (*Davis* v. *The Mayor,* 4 Kernan, 506.) Being a mere license, under the franchises conferred by the State to the railway company to construct its road within a given period, upon ground over which the city had exclusive control, it could waive a strict performance of the condition as to time. The license granted by the ordinance is no more a franchise than would be a grant of the right of way by a private citizen to the company to construct its road over his lands, and it is as competent for the city as for a private owner to extend the time of performance, or to amend, modify or annul the contract by mutual agreement."

In *Board of Trade of Chicago* v. *People, supra,* the court defined a franchise to be a privilege emanating from the sovereign power of the State, owing its existence to a grant, or, as at common law, to prescription, which presupposes a grant, and which privilege is invested in an individual or a body politic, and held the word "franchise," in the statute of this State providing for appeals or writs of error to this court direct, was used in that restricted sense. On page 82 the court said: "In *Bank of Augusta* v. *Earle,* 13 Pet. 579, it was said by the court: 'It is essential to the character of a franchise that it should be a grant from the sovereign authority, and in this country no franchise can be held which is not derived from a law of the State.' As was said in *City of Bridgeport* v. *New York and New Hampshire Railroad Co.* 36 Conn. 255, the 'term franchise has several significations and there is some confusion in its use; but when it is used in a statute or elsewhere in the law, it is generally, if not always, understood as a special privilege conferred by grant from the State or sovereign power, as being something not

belonging to the citizen of common right.' In *Morgan* v. *Louisiana,* 3 Otto, 217, the court very justly remarked that much confusion of thought had arisen from 'attaching a vague and undefined meaning to the term franchise.' It must have been in this restricted sense the term 'franchise' was used by the General Assembly in the statute we are considering, and not in that broad sense contended for. No doubt the word 'franchise' is sometimes used as synonymous with privileges and immunities of a personal character, but in law its appropriate meaning is understood to be something which the citizen cannot enjoy without legislative grant."

In *Mills* v. *Parlin, supra,* a bill was filed by a property owner to enjoin the defendants from using or operating a steam railroad in front of his dwelling house in the city of Canton, under an ordinance passed by the city council of said city. An appeal was taken to the Appellate Court, where the decree granting the relief prayed for was reversed. On a further appeal to this court, as well as in the Appellate Court, objection was made to the jurisdiction of the Appellate Court on the ground that a franchise was involved. The court, on page 63, said: "The bill was simply to test the authority of defendants to use a public street in front of complainant's residence for the use of their railroad track. The right or title or the validity of a franchise was in no way involved, and the appeal was properly taken to the Appellate Court in the first instance."

As it clearly appears that no freehold or franchise is involved in this suit, this court is without jurisdiction to hear and determine the same. The writ of error will therefore be dismissed.                    *Writ dismissed.*