## City of Chicago v. Chicago Telephone Company.

### Gen. No. 12,788.

1. MANDAMUS—*when does not lie to enforce performance of private contract.* Mandamus does not lie by a municipal corporation to compel a telephone company to comply with its franchise ordinance and to furnish a true statement of its gross receipts during a period specified and to pay into the treasury of such municipal corporation the percentage of such receipts agreed to be paid by such telephone company as part of the compensation for the grant of the franchise.

*Mandamus* proceeding. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed December 11, 1906.

**Statement by the Court.** This is an appeal from a judgment of the Circuit Court of Cook county dismissing a petition for a writ of *mandamus*.

The petition as amended prayed that the Chicago Telephone Company be required forthwith to file with the comptroller of the city a true statement of the gross receipts of the company from all its business done for the six months next preceding January 1, 1905, within the limits of the city as the limits existed during the said six months, sworn to by the said Wheeler and Mosley, and at the time of filing the statement to pay into the city treasury three per cent. of said gross receipts.

The court below sustained the demurrer of appellee to the petition. The petitioner elected to stand by its petition, which was then ordered dismissed and the petitioner appealed.

The petition sets up that the Chicago Telephone Company was organized about January 14, 1881, under the general laws of this state relating to corporations; that the charter of the company authorizes it to construct and operate telephone and telegraph lines and do a telegraph and telephone business, and al-

leges the adoption by the city about January 4, 1889, of an ordinance "authorizing the Chicago Telephone Company to construct" its line of wires in the city, section 6 of which reads as follows:

"6. COMPENSATION—SERVICE RATES—USE OF CITY —RIGHTS RESERVED. The said Chicago Telephone Company shall file with the comptroller of the city on the first days of January and July of each year, a statement of its gross receipts from the telephone business done by said company within the city of Chicago, for the six months next preceding such statement, which statement shall be sworn to by the president and secretary of said company, and at the time of filing said statement, the said company shall pay into the city treasury three (3) per cent on such gross receipts, and said company, during the term for which this ordinance is granted, shall not increase to its present or future subscribers the rates for telephone service now established. And provided also that with the acceptance hereinafter required there shall be filed by said company a schedule showing the rates charged by said company for telephone service at the date of the passage of this ordinance within the limits of the city of Chicago. And the said company shall connect its wires with the mayor's office, department of public works, fire department, police department, building department, city collector's office, city clerk's office, health department and law department, and place and keep one telephone in each of said places free of charge to the city, so that said telephones may be used in connection with all wires under control of said company connected with its exchange in the city of Chicago, and said company shall also rent to the city of Chicago telephones for the sole use of the police and fire alarm system of the city of Chicago at an annual rental of not to exceed five ($5) dollars per annum for each telephone; provided, however, that nothing in this ordinance contained shall be construed or taken as preventing the city of Chicago, whenever it shall be authorized so to do, from passing an ordinance regulating the rates to be charged by telephone com-

panies for the rental of telephones, or for the licensing of telephone companies, it being the intention of this ordinance that the city of Chicago shall in no way surrender any rights it may have, or may hereafter acquire, to license telephone companies or to regulate the prices to be charged for telephones; but upon such licensing or upon such regulation of such prices, then the provisions of this section as to payment of revenue and furnishing of telephone facilities to the city of Chicago shall cease to be binding upon said company; provided, also, that nothing in this ordinance contained shall be construed as preventing the city of Chicago from granting an ordinance to any other telephone company.''

The petition recites the acceptance in writing by the company of the ordinance as thereby required, and that the company filed a bond in compliance with the ordinance; that since January 10, 1889, until now, the company has constructed, operated and extended its telephone lines under the authority of the ordinance in the streets, alleys and public grounds of the city and thereby conducted its telephone business; that it was the duty of the company to file semi-annually a sworn statement of its gross receipts from all its business with the comptroller and at the same time pay three per cent. of all such gross receipts into the city treasury; that the company filed in the office of the city clerk a schedule of the rates charged by it within the city limits; that by means of the telephone lines constructed, under the ordinance, it was enabled to place telephone instruments with its subscribers from which it derived and is deriving large profits; that the sole right of the company since January 10, 1889, to date to construct and maintain poles or wires, etc., in the streets of Chicago is derived from and dependent upon the said ordinance and the consent of the municipal authorities contained therein; that the duty of the company to file a statement of the gross receipts of the business done by it for the previous six months within the city limits related to the city limits ''as

those limits existed during said period of six months;"
that notwithstanding its legal duty, etc., the company
from January 10, 1889, until July 15, 1904, prepared
and filed semi-annually false and misleading state-
ments of its gross receipts from business done within
the city; that none of those statements included "all
the gross receipts from all the telephone business"
done by the company within the city limits "as the
city limits existed during the six months next preced-
ing the date on which each of said statements was re-
quired by the said ordinance to be filed;" that none
of the statements dealt with the receipts from any
business done outside the limits of the city as they
existed on January 10, 1889, although since that date
they were greatly extended by the annexation of ad-
jacent cities, towns and other territory; that none of
the statements included either the receipts from long
distance business or "toll charges;" that at the dates
of the filing of these statements, the company paid
three per cent. of the amounts therein given as their
gross receipts to the city, which accepted these pay-
ments in ignorance of the fact that they were not three
per cent. of all the gross receipts from the business
done by the company within the city limits for the
previous six months; that the city and its successive
comptrollers were deceived in accepting all of the said
payments by the peculiar and cunning wording of the
statements which accompanied them; and that the
company has constructed and operated its lines in the
annexed territory solely by virtue of the said ordi-
nance, and has thereby derived large profits, etc.

Certain other parts of the petition were expunged
by the trial court.

It is said in behalf of appellant that the first ques-
tion and the most important one relates to the terri-
torial scope or application of the ordinance of the City
of Chicago, of January 4, 1889; that is, do its provis-
ions govern all the territory annexed to the city since
the date of its passage, either because that is the

proper construction of the ordinance, or because the annexed territory became subject to the ordinance by operation of law? Appellant insists the ordinance is unambiguous, while appellee claims that the ordinance only applies to the limits of the city as they existed on the date of the passage of the ordinance.

The second question is said to be, do the words "gross receipts from the telephone business done by said company," as used in section 6 of the ordinance, include receipts from the "long distance" and "toll" business done by the company in the city and all other kinds of city telephone business? The city insists that they do.

Other questions are raised which relate to the pleadings.

MACLAY HOYNE, Assistant Corporation Counsel, for appellant; JAMES HAMILTON LEWIS, Corporation Counsel, of counsel.

HOLT, WHEELER & SIDLEY, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

The Circuit Court sustained a demurrer to the petition of appellant upon two grounds: First, that the ordinance granted by the City of Chicago to the telephone company, which is set out in full in the petition, constitutes in substance a contract between the parties, notwithstanding statements are required of the appellee and payments are provided for which might tend to benefit the public; and that the writ of *mandamus* will not issue to enforce a mere contract. Second, that *mandamus* will not be awarded where it is sought for the enforcement of a mere abstract right and will not definitely fix the rights of the parties, even though the right of the petitioner under the contract is clear. It was held that even if the right of the city under the ordinance to a statement from the telephone com-

pany of its receipts within the city limits as the latter existed at the time of such statements be conceded, nothing would be settled by the issue of the writ; that the city would not be bound by the statement of the telephone company and the company might not be; that the writ would not therefore be awarded where it does not clearly appear that it will definitely settle the rights of the parties.

It is said in behalf of appellee that the only pertinent questions upon this record are such as relate to appellant's right to invoke the remedy by *mandamus,* and that the extent of the rights and obligations created by the ordinance in question can more properly be left for settlement in a pending suit between the parties (see The People v. Chicago Telephone Co., 220 Ill. 238); that *mandamus* will not be awarded to enforce private obligations resting on contract; that an obligation created by acceptance of an ordinance to pay money compensation to a municipality for the privilege of using its streets is contractual and that *mandamus* will not be granted to enforce a doubtful right; and it is said that appellant is not entitled to the relief sought for other reasons which, in the view we take, we deem it unnecessary to consider.

It is said by counsel for the city that certain portions of its petition were erroneously expunged by the Circuit Court. Those expunged portions which appellant appears to consider most important set forth in substance that appellee applied to the city for permission to place its poles and wires in certain streets and alleys, that the right given it in that behalf by said ordinance was its sole and exclusive authority for so using and occupying such streets and alleys, that notice was given to appellee that it would be required thereafter to include in its report and percentage all business done in subsequently annexed territory, and that the receipts from long distance telephone business were not included in any reports made by the company nor was any percentage of re-

ceipts of such business paid to the city. Treating these as material and for the purposes of the argument as legitimate averments of the petition, the question to be determined is whether the city is entitled to the writ of *mandamus* for which it prays, requiring the telephone company to file a true statement of its gross receipts from all business within the present city limits and to pay into the city treasury three per cent. on such gross receipts.

It is conceded by counsel for appellant "that the obligations of a mere private contract cannot be enforced by *mandamus*," but it is urged that the principle has no application in this case, and that the judgment of the Circuit Court amounted to a clear abuse of discretion; that a city ordinance is a law, rights and duties under which can be enforced by *mandamus*, even when resting partly upon contract; that even if the ordinance in question be deemed a mere contract, it is not a private contract, and that the remedy sought cannot be defeated upon the ground that such ordinance is also a contract or because it would compel the payment of money. It has been held in this state that where there is a grant and acceptance by a corporation of an ordinance involving the performance of acts in the nature of duties or services to the public as a condition of the grant, "the corporation accepting the franchise may be compelled by the writ of *mandamus* to perform the duty so enjoined by the grant and consented to by the acceptance thereof." The People v. Suburban R. R. Co., 178 Ill. 594-604. In that case it was sought to compel the respondent corporation to comply with the express provisions of an ordinance which it had accepted, which provisions created "a duty to the public to be performed by the company for the benefit of the public." It was urged in behalf of the corporation as "fundamental law" that "mere contract obligations cannot be enforced by *mandamus*." The court, however, held it to be "now well settled

that when there is a grant and acceptance of a
public franchise involving the performance of such
acts or service, the corporation accepting the fran-
chise may be compelled by the writ of *mandamus* to
perform the duty so enjoined by the grant and con-
sented to by the acceptance thereof.'' The writ was
awarded commanding the company to sell tickets to
passengers, good to stations in River Forest, at the
same rate as to stations in Cicero, as the ordinance
required; and the court said (p. 606): ''The fact the
ordinance requires the company should formally ac-
cept it as conditioned had no effect to render the grant
a mere private contract.'' In Rogers Park Water Co.
v. Fergus, 178 Ill. 571, a writ of *mandamus* was
awarded fixing water rates as provided by an ordi-
nance of the City of Chicago enacted subsequent to the
annexation of Rogers Park to said city, which rates
were lower than those fixed in the original ordinance
of the village of Rogers Park, which was accepted by
the water company, under which ordinance it had
laid its pipes and previously operated its water works.
It was held that the ordinance of the village and its
acceptance did not constitute a contract that the rates
fixed by the ordinance should remain fixed and un-
changed and that no such ''contract obligations arose
by reason thereof'' (p. 578). In these cases the writ
as awarded enforced rates for services which the cor-
poration agreed to render to the public where a clear
right was thought to exist.

In Chicago Mun. Gas Light Co. v. Town of Lake,
130 Ill. 42, which was a bill in equity to enjoin the
town from interfering with the company in laying gas
pipes in the streets, it was held that the company by
acceptance of its ordinance undertook to perform a
service for the public benefit of the town and its in-
habitants, which undertakings were a sufficient con-
sideration for the contract based on the ordinance,
and that this was a valid and binding contract which
the town could not abrogate by repealing the ordi-

nance.   In like manner ordinances of a municipality granting licenses to public service corporations for use of public streets are said in Belleville v. Citizens Horse Ry. Co., 152 Ill. 171-186, to be licenses which when accepted become valid and binding contracts. In The People v. The Central Union Telephone Company, 192 Ill. 307-311, it is expressly stated that the grant by the city of the right to use the streets "is not a franchise, but a license or contract," which "could not be revoked or rescinded except for cause." So also in Chicago Telephone Co. v. N. W. Telephone Co., 199 Ill. 324-347, Chicago Gen. Ry. Co. v. City of Chicago, 176 Ill. 253-259, and there are other cases. We conclude it to be established in this state that a corporate franchise emanates from the government or the sovereign power; that where a corporation is created by law with power to make use of city streets upon the consent of the city under such conditions as may be imposed, and by ordinance such consent is given and privilege granted, "the grant by the city is a mere license and not a franchise;" Belleville v. Citizens Horse Ry. Co., *supra*, p. 185; City of Chicago v. Rothschild, 212 Ill. 590-592; that the corporation accepting such license may be compelled by *mandamus* to perform the public duty and render the service enjoined by the grant and consented to by its acceptance; that such license when accepted becomes a valid and binding contract with the municipality, but that such acceptance has not the "effect to render the grant a mere private contract" not enforcible by *mandamus* (Rogers Park W. Co. v. Fergus, *supra*) where a clear right exists to compel the corporation to render services to the public in the manner in which it agreed to render them in accepting the ordinance with its privileges and obligations.

In the case at bar the provisions of the ordinance which it is sought to enforce by the writ of *mandamus* are those requiring the city to file a statement of its gross receipts from all its business within the present

city limits which have been extended since the ordinance was accepted by the appellee, and to pay into the city treasury the stipulated three per cent. upon all such gross receipts of every nature and kind. There is, in our opinion, a clear distinction between the purely contractual obligation to render the statement and pay the percentage required by the ordinance, and an obligation to render the express service to the public which is the primary purpose stated in the ordinance for which the privileges granted by it are given. If for example the telephone company was refusing to furnish the use of its telephone lines and apparatus as its ordinance requires to one section of the city on equal terms with other sections, or was demanding exorbitant compensation not warranted by the ordinance which it has accepted and under which it is operating, and a writ of *mandamus* should be sought to compel it to perform the duties and render the services to the public upon which the grant by the city was conditioned, the questions presented would be very different from those before us in this record. The agreement to render such services to the general public may be deemed in a sense imposed by law, and stands upon a different basis from the more purely contractual obligation to make a statement and pay compensation to the city. The latter may be deemed an agreement with the corporation in its private and business character, which agreement while it may indirectly benefit the citizens by increasing the city's income aside from taxation, does so in the same way as the income derived from a water system operated by a municipality. In such case the city stands upon the footing of a private corporation or individual rendering the same services, which may be a special advantage to the municipality as distinct from the public at large. Wagner v. City of Rock Island, 146 Ill. 139. The same distinction is stated in Suburban Ry. Co. v. People, *supra,* on page 608, where it is said that "the village in its corporate capacity has no interest

in the enforcement of duties owing by the company to the public. As a corporate entity the village is not affected by compliance or non-compliance with the rates of fare charged or collected by the respondent from the passengers. The writ relates to a matter affecting the public." Therefore the writ of *mandamus* was granted.

In cases where, as in this, the provision of the ordinance sought to be enforced is in the nature of an executory contract, it is one which the court "has no jurisdiction by *mandamus* to compel the performance of." People v. Dulaney, 96 Ill. 603-511. In the case at bar as in that cited, it may be said that the duties which relator asks to have the respondent perform "arise out of the alleged contract," that " it is only practicable by *mandamus* to compel the performance of specific acts where the duty to discharge them is clear and well defined and when no element of discretion is involved in the performance." The performance of the contract to pay compensation which is set forth in section 6 of the ordinance under consideration requires the exercise of discretion and judgment in determining what are the gross receipts "within the limits of the city" upon which the latter is entitled to compensation; the determination of a legal question as to what city limits are referred to, which, no matter what we may think about it, is nevertheless not made clear by the language of the ordinance and has been a matter of judicial consideration in litigated cases, some of which are cited by appellants. "In such cases *mandamus* is not an appropriate remedy." *Idem,* p. 512. "It is well settled that in a doubtful case this writ should not be awarded. It is never awarded unless the right of the relator is clear and undeniable and the party sought to be coerced is bound to act." North v. Trustees, 137 Ill. 296-301, and cases there cited. We are of opinion that this contractual section of the ordinance under consideration should not be enforced by *mandamus*. As said in High on

Extraordinary Remedies, sec. 321: "The use of the writ is limited to the enforcement of obligations imposed by law," and not those "arising out of contract relations." See also State ex rel. New Orleans v. New Orleans R. R. Co., 37 La. Ann. 589, in which the same proposition is affirmed; and the People ex rel. v. Trustees 51 Ill. 149.

We concur with the Circuit Court that if *mandamus* should be awarded in this case it would not necessarily define and settle the rights of the contending parties under the section referred to of the ordinance.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*