## City of Rock Island v. Central Union Telephone Company.

### Gen. No. 4,718.

1. ORDINANCE—*when grant to telephone company does not violate constitution.* The grant to a telephone company of the power to erect poles, string its wires, and generally to construct and maintain a telephone system, is not a violation by a municipality either of section 14 of article II or section 22 of article IV of the constitution of the state.

2. ORDINANCE—*rights of telephone company under grant.* Where a telephone company accepts an ordinance giving it the right to construct and maintain a telephone system, and acts thereon, a contract is created which cannot be revoked or rescinded by the municipality unless for cause.

3. ORDINANCE—*life of franchise grant.* A grant to a corporation aggregate, limited as to the duration of its existence, without words of perpetuity being annexed to the grant, only creates an estate for the life of the corporation.

4. ORDINANCE—*grant to telephone company not exclusive.* A grant to a telephone company to construct and maintain a telephone system is not exclusive and the municipality may subsequently grant to another company a like privilege.

5. INJUNCTION—*when lies to restrain threatened trespass.* Equity has jurisdiction to restrain a municipality from illegally interfering with or destroying the property of a telephone company which is conducting a telephone system pursuant to an ordinance which it has accepted and acted upon.

6. INJUNCTION—*rule with respect to issuance of preliminary mandatory.* While it is not usual to issue a preliminary mandatory injunction, yet there is no inflexible rule against it and such a preliminary injunction may properly be issued where it is necessary to maintain the *status quo* and protect the rights of the complainant.

7. EQUITY—*extent of relief awarded by.* Where the aid of a court of equity is invoked for a proper purpose, a court will give

such relief, if the facts justify it, as will afford a complete remedy; courts of equity will not give only partial relief and compel the complainant to resort to a court of law for the remainder of his remedy.

8. CITY COUNCIL—*when may bind successors.* A city council has power to make a grant to a telephone company which is binding upon its successors.

Bill in equity. Appeal from the Circuit Court of Rock Island county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed March 13, 1907.

**Statement by the Court.** On March 21, 1906, the Central Union Telephone Company filed a bill in equity against the city of Rock Island and its mayor for an injunction, and gave notice of an application for a preliminary injunction thereunder. On April 16, 1906, the complainant filed an amended bill. The mayor demurred to the bill. The city filed a combined demurrer and answer. The application for an injunction was heard upon bill, answer and proofs in the form of affidavits. The hearing lasted several days, and during that hearing the city filed a cross-bill against the telephone company. A preliminary injunction was granted, and this is an appeal therefrom by the city only. The mayor did not appeal.

The following is an outline of the principal facts appearing from the pleadings and proofs, which are admitted or not seriously disputed. Appellee was incorporated under the laws of this state in 1883, and among its objects were to transmit and receive signals by electricity for all purposes, and to do a telephone, telegraph and district telegraph business, and its duration was fixed at ninety-nine years. In 1887 appellant adopted an ordinance granting to appellee the right to erect and maintain its poles and wires on the streets and public ways of the city of Rock Island for the purpose of supplying to the citizens of said city and the public communication by telephone. It re-

quired appellee to furnish the city the use of certain telephones free of charge and to permit the city to place fire alarm wires upon its poles free of charge, and provided that it should take effect only on appellee filing with the city clerk its written acceptance thereof. Appellee filed the acceptance within a few days and filed the ordinance for record in the office of the recorder of said county. Appellee had previously purchased a telephone plant then in existence in Rock Island, and the ordinance recognized and approved the same. Appellee proceeded under said ordinance to erect and maintain in the streets of said city poles and wires necessary to supply citizens and the public with communication by telephone, and operated and maintained from thence hitherto telephone lines and a telephone exchange and a telephone system under said ordinance. It furnished the city said free telephones, and the city placed fire alarm wires upon appellee's poles and fixtures, all free of charge. In 1893 appellant and appellee made a contract by which appellee put in a telephone police patrol system for appellant for an annual consideration agreed upon; and appellee also furnished appellant with an additional number of free telephones. Appellant is still using said police patrol system.

Differences arose between the parties, the real cause of which is disputed. On September 15, 1902, certain telephone operators in the employ of appellee petitioned the city council of appellant to investigate their grievances against appellee, and a committee was appointed to make said investigation, which committee presented a report unfavorable to appellee on October 6, 1902, and thereupon the city council directed the city attorney to bring in an ordinance repealing said ordinance of 1887. On November 3, 1902, the city council of appellant adopted an ordinance repealing said ordinance of 1887, and the same was approved by the mayor, and has never since been vetoed, repealed or amended. On November 5, 1902, the city

attorney of appellant notified appellee in writing of
the passage of said repealing ordinance, and that ap-
pellee was without a franchise in said city and was
operating without permission of said city, and di-
rected appellee to cease conducting the business of
a telephone exchange within said city, and therein
stated that unless its operations were stopped appel-
lant would take forcible steps to attain that end.
Thereafter there were negotiations between the parties
which failed, near the close of which appellant pre-
pared an ordinance which it notified appellee it would
pass if appellee would accept it.  Appellee refused to
accept it, and prepared an ordinance which it would
be willing to accept, but appellant refused to pass it.
Before the offers and rejections of these ordinances,
and on November 2, 1903, the city council adopted
a resolution ordering appellee within three days to
remove their telephones from the city offices, and on
November 6, 1903, it notified appellee of said resolu-
tion.  On August 1, 1904, the city council adopted a
resolution directing the mayor to notify appellee to
remove certain of its poles within forty-eight hours,
and to remove all poles planted in the city since ap-
pellee's franchise had been revoked.  On July 10,
1905, the mayor of the city notified appellee that un-
less it removed certain poles and wires between the
hours of seven and twelve o'clock the next forenoon,
he, the mayor, would remove the same, and he warned
appellee in said notice not to set any more poles in
the city without permission.  On March 19, 1906, the
efforts at a compromise by a new ordinance having
failed, the city council adopted a resolution directing
the mayor to notify appellee that if it did not pre-
sent an acceptable ordinance to the city council on the
following Wednesday the mayor would remove the
wires, cables and poles from the streets and alleys.
On March 19, the mayor verbally notified appellee
that he did not know whether he would wait until said
Wednesday before beginning operations.  This bill

was filed on said following Wednesday, and after a meeting of the city council on that day at which further efforts to adjust the differences between the parties failed.

Appellee has about 1,469 telephones in operation within the city of Rock Island, and has connections from said telephones to various cities and villages outside of Rock Island, and both within and outside the state of Illinois. Appellee claims to have expended approximately $100,000 upon said plant. Appellant claims that the expenditure has been much less.

Appellee contends that the motive of appellant in passing said repealing ordinance and in said subsequent proceedings was to compel appellee to accede to the demands of its employes in a certain controversy between it and them. Appellant contends that the poles of appellee are old, worn and decayed; that its instruments are old, defective and entirely out of date; that its service is very poor and unsatisfactory to the public; that its rates are unreasonable and extortionate; that its officers and operators are insolent to its patrons; and that it passed said repealing ordinance because of said unsatisfactory conditions. In answer to this appellee contends that it is operating a first class and satisfactory telephone system, and that its charges are as reasonable as the charges for like service in other cities of like size, and are as low as they can be placed with profit to appellee. Many affidavits were read in evidence by the parties in support of these respective contentions. Certain additional affidavits presented by appellant the court refused to hear, because not presented within the time limited by the court, and complaint is made of this action; but the contents of said affidavits are not set forth in the abstract and they will therefore not be considered. The court granted a preliminary injunction pursuant to the prayer of the bill.

Appellant contends that the ordinance of 1887

granted a franchise to appellee, and therefore violated section 22 of article 4 of the Constitution which forbids the passing of any local or special law granting to any corporation any special or exclusive privilege, immunity or franchise whatever; that said ordinance of 1887 granted to appellee special privileges, and therefore violated section 14 of article 2 of the Constitution, which forbids the passing of any law making any irrevocable grant of special privileges or immunities; that said ordinance of 1887 granted appellee a perpetual right and was therefore void. Appellant also contends that if said ordinance was valid, and if it was a contract and not the grant of a franchise, still no city council could bind a later city council in that way, and any subsequent city council could repeal said ordinance at pleasure; that if this position is not well taken, still any later council could repeal said ordinance for cause, and that the city council is sole judge when sufficient cause exists to authorize it to abrogate the contract, and its action in passing a repealing ordinance is therefore final; that if it is not the sole judge of such cause, still its action in passing the repealing ordinance is *prima facie* proof that due cause existed, and that such *prima facie* proof has not been overcome in this record; and that the proofs clearly show due cause existed for abrogating the contract. Appellant further contends that this is a bill for specific performance, and that appellee's remedy is at law; that no injunction should have been granted in any event till the final hearing; that the allegations of the cross bill made a preliminary injunction unnecessary and improper; and that the injunction is too broad, especially in permitting poles to be erected and wires strung pending the suit.

J. T. KENWORTHY, S. R. KENWORTHY and OLIVER OLSON, for appellant.

W. B. MANN and McENIRY & McENIRY, for appellee; D. K. TONE, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

In Chicago City Railway Co. v. People, 73 Ill. 541, it was held that a municipal corporation cannot grant a franchise; that an ordinance similar in principle to the ordinance of 1887 here involved does not grant a franchise, but a mere license; that it does not grant any special privileges which would prevent a like grant to any other company possessed of like powers; and that such an ordinance does not violate the Constitution. True, the court there did not discuss section 14 of article 2 of the Constitution, upon which appellant here in part relies, which provides that no law shall be passed "making any irrevocable grant of special privileges or immunities." But as the court there holds that such an ordinance does not grant any special privileges, it in effect holds that such an ordinance does not violate said constitutional provision. The fact that a strong dissenting opinion was filed, asserting the very positions taken by appellant here, and insisting that the ordinance there in question did grant special privileges, and did violate the Constitution, shows that the subject was thoroughly considered, and that the position taken by the court was the result of mature deliberation. That decision, rendered in 1874, has been recognized and followed ever since as fixing the law of this state upon the main question here involved. This doctrine is affirmed, and some of the cases applying it are cited, in City of Chicago v. Rothschild, 212 Ill. 590. The ordinance of 1887 upon which appellee relies was therefore not the grant of a franchise, or of special privileges, and it was not therefore void under section 22 of article 4 of the Constitution which forbids granting to any corporation any special or exclusive privilege, immunity or franchise, nor was it void under said section 14 of article 2 thereof.

It is equally well settled that when the ordinance here adopted by appellant in 1887 was afterwards ac-

cepted by appellee in pursuance of the terms of the ordinance, and was filed for record, there was thereby created a contract between appellant and appellee, by which appellee acquired a contract right to do the acts which the ordinance authorized it to do, and that after appellee had expended money in erecting the structures thereby authorized, in reliance thereon, said contract could not afterwards be revoked or rescinded by appellant,—unless, indeed, it could be revoked for cause, which we need not now decide. Chicago Telephone Co. v. Northwestern Telephone Co., 199 Ill. 324; People ex rel. v. Central Union Telephone Co., 192 Ill. 307. Even if the arrangement be only by resolution, it has the effect of a contract after the licensee has accepted the grant and erected the authorized structures. Village of London Mills v. White, 208 Ill. 289.

The ordinance of 1887 did not limit the period during which appellee could maintain its poles and wires upon the street. That did not make the ordinance a grant in perpetuity, and therefore invalid. A grant to a corporation aggregate, limited as to the duration of its existence, without words of perpetuity being annexed to the grant, only creates an estate for the life of the corporation. St. Claire County Turnpike Co. v. People, 82 Ill. 174, affirmed as Turnpike Co. v. Illinois, 96 U. S. 63; Snell v. City of Chicago, 133 Ill. 413, 432. Appellee's charter, which became effective on June 27, 1883, fixed its duration at ninety-nine years. The general incorporation act under which it was organized permitted it that duration. This license, when accepted and acted under by appellee, became a grant for the duration of appellee's corporate life, and no longer, and therefore, though the ordinance of 1887 did not in terms limit the duration of the grant, yet it was not unlimited.

The argument that the ordinance of 1887 grants exclusive privileges because appellee necessarily has exclusive possession of the spot where each pole stands,

is too technical. Nothing in that ordinance prevents a like grant to another company for a like purpose. Chicago City Ry. Co. v. People, *supra*. This principle was applied to telephone companies in Chicago Telephone Co. v. Northwestern Telephone Co., *supra*. Appellant has itself made another grant to another company to occupy the same streets whose use it granted to appellee by the ordinance of 1887.

Appellee erected poles, strung wires, put telephones into residences and business houses, established and operated a telephone exchange, and expended a large sum of money upon the faith of this ordinance. It is obvious that under the plainest principles of ordinary justice it cannot be deprived of these property rights by the mere caprice of the city council. Appellant claims that appellee's appliances are out of date, old, defective and of slight value; that its charges are exorbitant, and that its officers and employes are insolent to its patrons. There is in Rock Island a rival telephone company of which appellant avers that its appliances are new and modern, its service excellent and its rates much more reasonable. If this is true, the natural result will be that the public will cease to use the instruments of appellee and will use the instruments and connections of the other company. That they have not done so, indicates that appellant's claims upon this subject are overdrawn. But, if appellant's position as to the inferiority of appellee's plant and service is correct, and if that matter is within the control of appellant, which we think it unnecessary to now decide, yet the fact remains, first, that appellant did not establish any such regulations by its ordinance of 1887, or reserve any right to regulate that subject, and second, that any regulations as to service and rates would require to be by a general ordinance applicable to all telephone companies within the city (People v. Blocki, 203 Ill. 363), and appellant does not claim to have ever established any such general regulation. Such an ordinance, if appellant has au-

thority to legislate upon that subject, would only be operative for the future, whereas appellant here has condemned the past action of appellee, and sentenced it to a forfeiture of its contract and property rights, and appointed its mayor the executioner to forcibly destroy appellee's property and property rights. If appellee's appliances and service are as defective as appellant asserts, and if the regulation thereof belongs to appellant, it is plain that appellant is not thereby authorized to destroy appellee's property, or to drive appellee out of the business by force. If appellee has broken its contract, or has violated any lawful regulation established by appellant, appellant will find in the laws of the land some other remedy than the destruction of its opponent. If there are implied terms or covenants in this contract, not expressed in the ordinance, as contended by appellant, and if appellee has violated those implied terms or covenants, the law will afford appellant a remedy, but it will hardly permit appellant to judge its own cause and execute its decree in its own favor.

Just before this bill was filed the city council had directed the mayor to destroy a part of appellee's property, and the mayor had notified appellee in writing that he would execute that direction after a certain day, and this bill was filed on the last day before the destruction was to be accomplished. The injury which would thereby be inflicted upon appellee would be destructive and irreparable, and not capable of full compensation in damages in a suit at law. The cost of restoring the poles and wires might be computed, but the loss of revenues from the rental of instruments, and the loss of business and reputation, would be very difficult and perhaps incapable of estimation. Appellee also owed a duty to its patrons to protect them from the inconvenience to which this radical action by the city would subject them. On the other hand an injunction restraining the destroying hand of appel-

lant till the rights of the parties had been determined, upon a final hearing, would not seriously harm the city and would but slightly inconvenience it. We are of opinion that equity had jurisdiction to restrain this threatened trespass, and to preserve the *statu quo* till the rights of the parties had been judicially determined. 3 Pomeroy's Eq. Juris. sec. 1357. When a court of equity has acquired jurisdiction for one purpose, it will retain jurisdiction for all purposes, and may grant legal remedies which would otherwise be beyond its power. Keith v. Henkleman, 173 Ill. 137; Longshore v. Longshore, 200 Ill. 470. If, therefore, but for the facts warranting resort to a court of equity, appellee would have been required to resort to an action at law to compel appellant to permit it to place poles and wires upon the streets to reach and accommodate new patrons, yet, the aid of a court of equity having been invoked for a proper purpose, the court will give such legal relief, if the facts justify it. Thus, it was held in People v. City of Chicago, 53 Ill. 424, that where a party had filed a bill in equity against the city of Chicago for equitable relief touching a certain matter, the courts would not, while that suit was pending, entertain an action of *mandamus* in favor of that complainant against the city to enforce complainant's legal rights in relation to the same matter, although, but for the suit in chancery, the party would have been entitled to a writ of *mandamus*. The ground of the decision was that the court of equity had acquired jurisdiction for a matter within its province (there, as here, an injunction), and that it had thereby acquired full jurisdiction to adjust and enforce not only the equities but also the legal rights of the parties involved in the subject-matter in controversy, and while that suit was pending a court of law would not permit the complainant to resort to a suit at law to enforce those legal rights.

Section 2 of the ordinance of 1887 provided that

poles and wires should be placed under the supervision of the street and alley committee, and so placed and the wires so secured and kept at such elevation as to reasonably avoid danger to persons and property, and that no part of the poles, supports or wires should interfere with the proper use of the streets for other lawful purposes, etc. Section 3 provided that the poles should not be so set as to interfere with the placing or proper maintenance of any water pipe, gas pipe, drain or sewer then or thereafter authorized by the city, and it provided for a change of grade or curb lines of any street after the poles had been set, and required appellee to re-set the poles to conform to such changes. The order for an injunction provided that if appellee should give notice to the street and alley committee that it desired to erect and maintain additional poles and wires upon the streets and alleys, and request said committee to designate the location thereof, and if said committee should fail or refuse to locate the same, after the expiration of a reasonable time, then the city and mayor were enjoined from interfering with appellee in erecting or maintaining such new poles and wires upon said streets and alleys, so long as the same were erected and maintained in accordance with said ordinance of 1887. It is urged that this part of the injunction is mandatory, and should not be granted till a final decree. It is the usual rule that a mandatory injunction will not be issued till a final decree. Hunt v. Sain, 181 Ill. 372. But in applying this rule here two things are to be noted. First. The paragraph of the injunction just stated is not strictly mandatory. It does not command appellant to do anything. It gives it an opportunity to locate new poles and wires when requested by appellee, but it does not require it to do so. If it fails or refuses to locate them when requested, then it is only enjoined from interfering with appellee while it locates, erects and maintains them, so long as it does so in accordance with the ordinance

of 1887. Second. It is not a correct statement of the law to say that a preliminary injunction will never be made mandatory. High on Injunctions, sec. 2, says that though mandatory injunctions are seldom allowed before the final hearing, they sometimes are granted on interlocutory applications. An interlocutory injunction does not anticipate or depend upon the ultimate conclusion to be reached upon the rights involved in the litigation. It only shows that a sufficient case has been made out to authorize or require the court to preserve the property or rights in issue *in statu quo* until a final hearing upon the merits. Usually this is accomplished by keeping everything at rest and in its present condition. Sometimes, however, this will be fatal to the rights which the complaint alleges and seeks to establish. In discussing the propriety of a preliminary mandatory injunction, in T. A. A. & N. M. Ry. Co. v. Pennsylvania Co., 19 L. R. A. 387, the court thus stated the true rule: "The office of a preliminary injunction is to preserve the *status quo* until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the *status quo* is a condition not of rest but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits." Many cases are there cited in support of that position. Let us apply this rule to the case before us. This amended bill avers that at the time it was filed there were one hundred and ninety subscribers to appellee's local exchange service waiting to be supplied with telephone instruments at their residences and places of business, and that in order to furnish telephone service to said subscribers it will be necessary for appellee to set poles, string wires, and do other necessary construction work. The position taken by appellant

at and prior to the filing of this bill obviously prevented appellee from extending its telephone service to meet the needs of these new subscribers. This litigation may be protracted. It will work an irreparable injury upon appellee to permit appellant to prevent appellee from its natural growth during the pendency of this suit. If appellee cannot furnish its service to new subscribers while the suit is pending, this will be likely to be ruinous to its business, and will enable its rival to greatly outstrip it and to gain a great advantage. If appellant desired to favor the new telephone company it could hardly do it a greater service than to prevent appellee from putting in any new poles and wires during the pendency of this litigation. If appellee is right in its contentions, then it ought not to be subject to be refused an opportunity to acquire new business, and the damages it would suffer from such exclusion would be irreparable and not capable of subsequent measurement in dollars and cents. On the other hand, if appellee is wrong and shall be defeated in the final decree, it can be compelled to remove or to submit to the removal of the new poles and wires so erected during the pendency of this suit under the protection of this injunction, and appellant will have suffered no substantial loss. Though appellee is a telephone company by name, yet it has the rights and is subject to the limitations of telegraph companies, as provided by the act of 1874 in relation to telegraph companies, being chapter 134 of the Revised Statutes, as held in Village of London Mills v. White, *supra.* Section 4 of that act required such companies to obtain the written consent of the corporate authorities of cities before erecting poles or wires in the streets or alleys of such cities. It is argued by appellee that by section 4 of the act of 1903 relating to telephone companies, appearing as paragraph 19 of chapter 134 of Hurd's Revised Statutes of 1905, such companies may erect their poles and wires upon the streets and alleys of cities, "so as not to incommode the public

in the use thereof," without the consent of the corporate authorities of such cities. If that be the true construction of the act of 1903, then the mandatory part of this injunction cannot be questioned by appellant. But the construction and application of the statute do not arise upon this record, for this so-called mandatory injunction required appellee to conform to the ordinance of 1887, and to seek to obtain the action of the committee named in that ordinance before placing new poles and wires. But, without the aid of the statute of 1903, we are of opinion that, for the reasons previously stated, the injunction was not too broad in the particular just discussed. It is also argued that this injunction prevents any subscriber to appellee from severing his relations with appellee. This is a misapprehension. The injunction runs only against the city and its mayor, and their agents and servants, and all persons aiding, abetting or confederating with them in committing the acts and grievances complained of in the amended bill. No one else is enjoined.

Near the close of the cross-bill, filed during the hearing of the motion for a temporary injunction, appellant alleged that if it undertook to remove appellee's poles and wires and other fixtures of its telephone plant from the streets and alleys by force, it might result in a breach of the peace, and that appellant desired the judgment of the court as to the validity of the repealing ordinance, and desired protection from the courts rather than to take the law into its own hands and remove said telephone plant by force, and was desirous of only proceeding in a regular and proper legal manner to have said question determined. Appellant now argues that after this statement in its cross-bill it was unnecessary and improper for the court to grant an interlocutory injunction. This cross-bill was only filed by the city, and did not waive the necessity for an injunction against the mayor. It does not appear that the city council has rescinded

its resolution directing the mayor to remove appellee's poles and wires from the streets. The cross-bill asserts positively its right to remove them. Appellant did not offer to waive the issue of an injunction or to stipulate that it would not cause its officers to enforce its resolution. But if it intended not to act while the suit was pending, why does it prosecute this appeal? The bitterness with which it here assails this injunction convinces us it was wisely granted.

One error in appellant's position is that it seems to assume that it is a general legislative body, and that it has created appellee's property and property rights, and that appellee holds them at its legislative will. On the contrary, both appellant and appellee obtain their powers from the same source, the legislature of the state. The legislature represents the public at large, and confers upon cities such power as it chooses. Appellee holds its property and property rights by virtue of state laws. It is upon the streets of the city by virtue of a contract between appellant and appellee which the legislature has authorized each to make. If that contract has been violated by either party such party has the remedies which the injured party to any other violated contract would have, and those remedies are to be sought in the courts. The general power of a city to remove obstructions unlawfully in the streets is not questioned, but that power does not apply to structures lawfully placed upon the streets by virtue of a valid contract with the city, and where the alleged expiration of the right is disputed. In such case equity will not permit the city to remove the structures during the term of the contract against the will of the owner, merely upon its own conclusion that the contract is at an end because of some act or omission of the owner.

We have cited but few cases to support the foregoing conclusions, but many other like decisions are to be found. These well-established rules laid down by the Supreme Court are the law of this state: An examina-

tion of other decisions of our Supreme Court which appellant cites shows that they relate to a wholly different state of facts, or that they relate to subjects over which the legislature or the contract has given the city greater control. To discuss and distinguish each of these cases would unduly extend this opinion. It is unnecessary to determine whether a different rule prevails in some other jurisdiction. It is manifest that if a city cannot bind itself by contract beyond the term of office of the aldermen then in office, capital can never be obtained to build street car lines, waterworks and telephone lines within cities. Public policy and the general good of the people forbid such a conclusion, unless required by the statutes. In this state the city has power to make such a contract as that here involved.

The order is affirmed.

*Affirmed.*