GENERAL ELECTRIC CABLEVISION CORPORATION, Plaintiff-Appellee, *v.* THE CITY OF PEORIA, Defendant-Appellant.

(No. 72-114;

Third District—December 15, 1972.

Paul J. Knapp, of Peoria, for appellant.

Boyd Goldsworthy, of Peoria, for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from a declaratory judgment rendered by the Circuit Court of Peoria County, Illinois, which interpreted the provisions of a community antenna television franchise ordinance of the City of Peoria, the defendant; found General Electric Cablevision Corporation, the plaintiff, to be not in default under the ordinance for having not yet completed construction of a CATV system in Peoria; and issued an injunction against the City as prayed by G.E. in its complaint.

The CATV franchise ordinance was passed April 5, 1966, after extensive research of the subject, revision of drafts, and solicitation of bids. It granted to G.E. the right to construct a CATV system in Peoria and operate it over a period of 20 years from the date of the ordinance; set out detailed specifications for construction of the system and provisions for its maintenance and operation; required that G.E. carry Peoria's three local channels at all times, be able to receive certain other channels "off the air," and file an application for microwave service for delivery of programs from certain other relatively distant stations; stipulated that there be an educational channel, free service to schools, and free service to the City; established the charges to be made to subscribers and the payments to be made to the City; called for insurance and a performance

bond; and covered remedies for default and rights on termination. G.E. accepted the terms of the franchise ordinance by instrument dated April 11, 1966.

The franchise ordinance called for minimum payments of $1,000 per month "in the event it is not necessary to obtain microwave licenses or permits from the Federal Communications Commission in order to operate an economically successful system," but otherwise only $100 per month until receipt of FCC approval, permits, and licenses. G.E. promptly commenced making the $100 payments, and promptly filed an application with the FCC for all licenses and permits needed for the importation of distant signals by microwave. However, the three local television stations opposed the FCC's granting of approval, licenses, and permits; G.E. and the local stations all employed legal counsel in Washington, D.C.; and lengthy continuances and delays followed. Meanwhile G.E. undertook various preliminary steps toward construction of a CATV system, but actual construction did not begin. Then on February 24, 1971, the City notified G.E. that unless the system were completed by February 28, 1971, four days later, its franchise would be terminated and its performance bond would be forfeited. This suit by G.E. against the City followed:

G.E. contends that it was given the right to construct a CATV system in Peoria under a valid and binding franchise ordinance of the City, the terms of which it accepted; that it is not in default under the franchise ordinance; that a license or permit from the FCC is necessary to bring in the distant signals for which the ordinance provides; that it is not obligated by the ordinance to construct all or any part of the CATV system before getting a permit or license from the FCC to import the distant signals; that for almost five years both it and the City so interpreted the franchise ordinance; that it relied on this interpretation in making the monthly payments and incurring substantial expenses; that the City has waived its right or is now estopped to contend that the franchise ordinance should be interpreted so as to call for construction of any part of the CATV system before the necessary FCC licenses or permits have been issued; and that the time given to cure the alleged default was plainly inadequate.

The City takes the position that the ordinance is void because its passage antedated Section 11—42—11 of the Illinois Municipal Code, which since 1967 has specifically authorized municipalities to license, franchise, and tax the business of operating a CATV system; that the ordinance is void also because it purports to grant an exclusive franchise in violation of Section 22 of Article IV of the 1870 Illinois Constitution, which prohibits the enactment of laws granting any special or exclusive

privilege, immunity, or franchise; that if the ordinance were once valid, G.E. has lost any rights it may have had thereunder, because it did not act on the license given it before revocation by the City, and because it did not commence construction within 60 days as, in the City's view, the ordinance required; that all the requisite elements for waiver by or estoppel of a municipal corporation are not present here; and that the trial court erred in admitting some of the testimony offered to show the city council's intent in adopting the ordinance.

■■ We are asked by the City to hold that on April 5, 1966, it had no power to enact a CATV ordinance because enabling legislation, Section 11—42—11 of the Illinois Municipal Code, did not go into effect until August 3, 1967. This argument was considered and rejected in *Illinois Broadcasting Co. v. City of Decatur*, 96 Ill.App.2d 454. In that case the court found an implied power to enact a franchise ordinance, deriving it from the power expressly given municipalities to regulate the use of streets, alleys, and other public ways. We believe the *Decatur* opinion is entirely correct, and we adopt its reasoning here. We note, also, that the record indicates that at least 29 Illinois cities in addition to Peoria had adopted CATV franchise ordinances prior to 1967, relying on their having an implied power to do so.

■■ The City's ordinance does not expressly state that it granted a CATV franchise to G.E. exclusively. Therefore, even though the practical effect of the ordinance may be to inhibit competition and so promote a monopoly, a question of constitutionality under Section 22 of Article IV of the 1870 Illinois Constitution is not presented. *People v. Chicago Transit Authority*, 392 Ill. 77, 91-92.

■■ The argument is advanced by the City that its ordinance created not a franchise but only a license, and that the license granted could be revoked because substantial performance by G.E. did not follow. The terms "franchise" and "license" are sometimes used interchangeably. (*Yellow Cab Co. v. City of Chicago*, 396 Ill. 388, 401. See, for example, *City of Geneseo v. Illinois Northern Utilities Co.*, 378 Ill. 506 *passim,* and compare *City of Chicago v. Rothschild & Co.*, 212 Ill. 590, with *Citizens Utility Co. v. Commerce Com.*, 50 Ill.2d 35.) In any event, our Supreme Court has said: "The privilege to use the public streets of a city or town, when granted by ordinance, is not always a mere license revocable at the pleasure of the municipality granting it, for if the grant is for an adequate consideration and is accepted by the grantee, then the ordinance ceases to be a mere license and becomes a valid and binding contract; and the same result is reached where, in case of a mere license, it is, prior to its revocation, acted upon in some substantial manner so that to revoke it would be inequitable and unjust." (*Peoria Ry. v. Peoria Ry. Terminal*

*Co.,* 252 Ill. 73, 81.) In the case before us, G.E. executed a written acceptance of the terms of the ordinance, and a binding contract was thereby created. (*People v. Chicago Telephone Co.,* 245 Ill. 121, 135.) Also, it appears from the record that substantial expenditures were thereafter made by G.E., although actual construction of a CATV system was not begun. Whether G.E.'s failure to commence construction constitutes a default allowing the City to rescind brings us to an examination of the provisions of the ordinance.

Both parties agree that the answer to the question whether failure to commence construction was a default is to be found in section 16 of the franchise ordinance. This section contains two alternative paragraphs, paragraph 2 and paragraph 3, with different deadlines for commencement of construction. G.E. is not in default if paragraph 2 is applicable, but it is in default if paragraph 3 applies. These paragraphs read as follows:

· "In the event it is necessary for the Company to obtain approval licenses and permits from the Federal Communications Commission in order to operate the system, the Company further agrees to commence operation within 12 months after the receipt of all necessary Federal Communications Commission licenses and permits, and provided further that any application which the Company may be required to file with the Federal Communications Commission, shall be filed within Thirty (30) days from the date hereof, and the work of installing the system required hereunder, shall be commenced within Sixty (60) days after the receipt of all necessary Federal Communications licenses and permits.

In the event it is not necessary for the Company to obtain approval licenses or permits from the Federal Communications Commission in order to operate the system, the Company further agrees that it will pursue construction of its facilities to the end that all persons residing within the City and desiring Company's service will be offered such service within a reasonable time in accordance with Sections 5 and 11 herein. Company further agrees to commence actual construction of the system herein described within 60 days after issuance of the Franchise, subject to acts of God and acts beyond the sole control of Company, and Company further agrees to complete construction of the system herein in accordance with Sections 5 and 11 of this Ordinance no later than 12 months from the effective date of this Ordinance, subject to acts of God and matters not within its sole control."

■■  The City argues that paragraph 3 applies because FCC approval is not needed to operate the system by carrying only local programs until microwave reception is allowed. G.E. maintains that paragraph 2

applies because FCC approval is needed to operate the system if microwave reception of distant stations is to be provided as the ordinance requires. If paragraph 3 were applicable, it would require G.E. to invest approximately $2,000,000 in construction of a system which would include microwave equipment not usable to bring in distant signals for an indefinite time, and which meanwhile could carry only programs available to the Peoria public without charge from the three local stations. G.E. would have nothing to sell. It is established that an interpretation of an ordinance leading to an absurd result is to be avoided if possible. (*City of East St. Louis v. Union Electric Co.*, 37 Ill.2d 537, 542.) It is therefore our opinion that paragraph 2 applies, construction did not have to be commenced within 60 days from granting of the franchise, and G.E. is not in default.

■■ Our conclusion that the parties expected construction to be delayed until FCC approval could be obtained is supported by a substantial amount of extrinsic evidence presented to indicate the intent of the parties and to show the practical construction given the franchise ordinance by them. The City claims that the trial court committed error in allowing individuals to testify as to the city council's intent. It has been held, however, that evidence of practical construction given an ordinance is admissible against a city. (*City of Chicago v. Chicago City Ry.*, 245 Ill.App. 473, 478.) Where there is sufficient competent evidence, as here, it is presumed that only competent evidence was considered by the trial court, and any error in admitting incompetent evidence is regarded as harmless. (*McFail v. Braden*, 19 Ill.2d 108, 120-21.) Furthermore, most of the evidence was admitted without objection, and error in the admission and consideration of evidence cannot be urged for the first time on appeal. *In re Estate of Fisher*, 409 Ill. 420, 423; *People v. Sweeney*, 114 Ill.App.2d 81, 86-87.

Since we have determined that G.E. is not in default, we do not reach the questions raised as to waiver or estoppel, or the inadequacy of four days' notice.

For the reasons given, the judgment of the Circuit Court of Peoria County is affirmed.

STOUDER, P. J., and SCOTT, J., concur.